# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **MICHELE WILLIS** | § | |
| | § | |
| **V.** | § | **CIVIL ACTION  NO.   _4:21-cv-752_** |
| | § | |
| | § | |
| **AKER BIOMARINE** | § | **Jury Trial** |
| **MANUFACTURING, LLC** | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE DISTRICT JUDGE:

Comes Now Michele Willis, Plaintiff herein, complaining of Defendant Aker BioMarine Manufacturing, LLC and files this Plaintiff's Original Complaint.

## I. PARTIES, JURISDICTION AND VENUE

1.      Plaintiff Michele Willis ("Plaintiff" or "Willis") is currently a citizen and resident of Montgomery County, Texas, and is a former employee of Defendant. Plaintiff worked for Defendant in Houston, Harris County, Texas and all relevant events occurred in Houston, Harris County, Texas.

2.      Defendant Aker BioMarine Manufacturing, LLC ("Defendant" or "Aker BioMarine") is a business entity which is a foreign for-profit corporation doing business in Houston, Harris County Texas.  Defendant is a U.S. company

1

ultimately owned by a foreign entity located in Norway.  Defendant may be served with service by serving its registered agent: CT Corporation System, 350 N. St. Paul Corporation Services Company d/b/a Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218. However, a waiver of service is initially being sent to Defendant's agent and its attorneys.

3.      This court has jurisdiction to hear the merits of Plaintiff's claims due to the federal question raised pursuant to the Family Medical Leave Act found at 29 U.S.C. §§ 2601 *et. seq.*, the Rehab Act found at 29 USC Sec. 794 et seq., the Americans With Disabilities Act 42 U.S.C. Sec. 12212 et. Seq., the Age Discrimination in Employment Act, 29 USC Sec. 623, et. Seq., and Title VII.  This court has supplemental and pendent jurisdiction over Plaintiff's State claims under the Texas Labor Code which are related to the claim giving rise to original jurisdiction that they form part of the same case or controversy, including claims dually filed with the state based on age, race sex and siability, pursuant to 28 USC Sec. 1367(a).

4.      All of the acts alleged herein occurred in Houston, Harris County, Texas, and are within the jurisdiction and district of this court.  Moreover, Plaintiff has received both her federal and state right to sue letters and this suit is timely filed within the respective right to sue deadlines.

## II. FMLA PROCEDURAL FACTS

5.     Defendant has employed, and continues to employ, fifty or more persons at, or within a seventy-five (75) mile radius of, the location where Plaintiff worked in Houston, Texas.   In addition, Defendant has more than 500 overall employees. Thus, Defendant was covered by the FMLA.

6.     Prior to Plaintiff's termination/layoff by Defendant, Plaintiff Willis had worked for Defendant for more than twelve (12) months, and for more than 1250 hours during that twelve-month period.

7.     Plaintiff had not taken twelve (12) weeks of off work for a serious health condition, or otherwise, during the twelve-month period prior to (a) the onset of his serious health condition, or (b) the time of his layoff/ termination. Thus, Plaintiff was covered by the FMLA.

## III.  FACTUAL BACKGROUND

8.     Plaintiff Willis was a Global Human Resource (HR) Leader with approximately twenty (20) years of experience and training in the Human Resource field.  Plaintiff's experience prior to working for Defendant included employment as a US HR Manager for  RiceTec, a global company with over two  hundred and fifty (250) employees. Plaintiff oversaw US Human Resources, programs, policies, and  processes  including  payroll,  employee  relations,  talent,  immigration,  and

3

performance. Plaintiff oversaw and implemented RiceTec's Global Code of Conduct.

9.    Working for Defendant Aker, Plaintiff Willis oversaw North American HR Operations serving as a global partner to leadership. Plaintiff Willis implemented personnel management processes for talent, recruitment, succession planning, development and onboarding in accordance with Global People practices. Plaintiff coached and developed managers for Defendant Aker's United States Management Team. Plaintiff had directed payroll, employee relations, and ensured policies and procedures across the United States sites were in compliance with local and federal employment laws.

10.    In 2018, Plaintiff was contacted by an external hiring agency regarding the Defendant AKER needing a Human Resources Manager for Defendant's North America region. Defendant was seeking a strong leader in its Human Resource Department who could direct its North America HR Operations, Services and subsidiaries. Plaintiff Willis had the necessary human resources background, including management, and the knowledge, education, and ability to do the job.

11.    Defendant's main office is located in the Netherlands. Plaintiff was interviewed by ten people globally. Plaintiff analyzed the Defendant's stated needs and determined the necessary changes to accomplish Defendant's goal to move its

4

organization forward. Plaintiff's final interview was with Defendant Matts Johansen, Chief Executive Officer, Executive Supply Chain Vice-President, Tone Lorentzen, Hege Spaun, and two other Executive Vice-Presidents (EVPs). EVP Tone Lorentzen acknowledged to Plaintiff that Plaintiff had accurately assessed the issues and challenges of the HR Director's job. EVP Tone Lorentzen then impressed upon and instructed Plaintiff that Plaintiff was to ensure that employees strictly followed and adhered to Defendant's Code of Conduct. Plaintiff agreed despite the fact that ultimately the Defendant did not follow its own Code of Conduct..

12.   In November of 2018, Defendant hired Plaintiff Willis to oversee Human Resources (HR) for all of North America, including Aker Bio Marine and its subsidiaries. Plaintiff worked with the Houston plant's leadership, including Charlie Kujawa, Plant Manager/Head of US Operations and the core leadership team to implement the policies Defendant prescribed, which included ensuring that all employees followed Defendant's Code of Conduct and the employee handbook's workplace employee anti-discrimination and anti-harassment policies /rules. Plaintiff worked on culture and value building, employee relations, leadership capabilities, succession planning, and front-line leadership training. All these areas were conveyed to Plaintiff in Plaintiff's Case Interview as necessary job duties.

13.     At the time of Plaintiff Willis' hire in November 2018, employee relations and morale were low and a significant issue with Defendant. Plaintiff Willis began implementing Leadership and Team Building Training in early January 2019, to turn around employee relations. Plaintiff's efforts quickly resulted in considerable progress and improved employee relations, communication, and succession planning. By Spring of 2019, employee morale had improved such that employees were readily volunteering for Corporate Responsibility events.

14.     In the summer of 2019, Defendant, thru Kristine Hartmann, EVP of Transformation, conducted a review of Plaintiff's job performance. EVP Hartmann acknowledged that Plaintiff Willis had already made significant changes in the operations of the Houston Plant and had been / was doing a great job.

15.     In her job with Defendant, Plaintiff Willis also had oversight for compliance for all investigations, labor laws, Anti-Corruption, and Business Conduct policies. Plaintiff's background and training had given Plaintiff the knowledge of the best practices in these areas and with change management.

### Plaintiff's Core Value

Plaintiff Willis would not accept and opposed workplace employment practices, retaliation  and disparate treatment that violated an employee's employment rights.

**Noelia Castro**

16.    On or about August 2019, Defendant hired Noelia Castro to become Plant Manager, replacing Charlie Kujawa.   In September of 2019, Defendant announced that Castro was the new Plant Manager. Castro discouraged employees from filing employment discrimination complaints.

17.    Employee complaints were part of Plaintiff Willis' job.  Plaintiff Willis was in charge of all investigations regarding employee discrimination and retaliation complaints.  After her arrival, Castro directed all employee discrimination complaints to go to her, Castro.  Castro would then work to control the narrative of the employee's complaint.  Castro disliked and tried to keep employee workplace disparate treatment claims down and Castro would discourage employees from going to Human Resources.

18.    As a result, Castro retaliated against Plaintiff Willis for making and filing discrimination complaints against Castro.   Plaintiff Willis opposed and protested to Defendant about Castro's discriminatory and harassing treatment of employees who made discrimination complaints, including Scott Stowers.  Plaintiff Willis received Stowers' complaints of discrimination, harassment and retaliation and opposed Castro's improper and illegal conduct to Defendant's management of employees and mistreatment of Willis.

19.    As a result, Castro retaliated against Plaintiff Willis because Plaintiff Willis engaged in protected activity, including raising complaints of Castro's discrimination and harassment and retaliation against Willis and employees to Defendant's management, investigated complaints of discrimination / retaliation by Castro, and opposed Castro's discrimination and retaliation to Castro herself.

## November 2019 Sexual Harassment Investigation

20.    In November 2019, Plaintiff Willis had begun an investigation into an employee's sexual harassment claims from an employees against a co-worker. Castro took over the sexual harassment claim. Castro instructed Plaintiff's HR Business Partner, Melissa Gutierrez, to not inform Plaintiff.   Plaintiff had been and was the primary point of contact for investigations and Castro removed Plaintiff. Discrimination investigations should be conducted by persons who have the training, experience, and ability to be neutral and impartial as employment workplace investigations require. Castro did not have experience of conducting discrimination investigations. Castro was the Plant Manager. Plaintiff Willis was the Manager in charge of discrimination investigations.

21,    Castro did not treat all parties with dignity, respect, and objectivity. Castro interviewed the complainant and the accused in the same room with their supervisors. These interviews should have been conducted in private and not in a

confrontational manner. Castro's actions showed that Castro was not neutral and the complaints were not properly investigated.

22.     Plaintiff Willis protested to Castro about Castro interfering in Plaintiff Willis' discrimination and investigation duties and opposed Castro interfering with the employees' discrimination rights.  Castro then threatened to remove Plaintiff's HR Managerial duties.

23.     As a result, Plaintiff Willis informed Hege Spaun, of the incident regarding the discrimination complaint, and informed Spain of Castro's threat of retaliation against Plaintiff Willis and threats to her job as HR Manager, North America, based on her opposition to the discrimination and improper handling of the claim and investigation. No action was taken by Defendant to resolve Castro's behavior and to investigate and handle Willis' opposition to and complaints regarding discrimination, harassment and retaliation, violating company policy and Title VII.

24.     Castro publicly stated that all complaints were to come directly to her. Castro took adverse action against Willis and retaliated against Willis through harassment and a change in her job duties.  Castro took over HR complaints and investigations from Plaintiff Willis as well as other actions harassing and retaliating against Plaintiff Willis, including sabotaging HR operations and removing

Plaintiff's job duties for talent management, performance, training and development and Plaintiff's budget. Castro also deprived Plaintiff Willis of professional development training and assigned her work out of the scope of HR.

25.     Castro continued to create a hostile work environment for Plaintiff Willis and increased scrutiny of Willis' job performance and spread false innuendos and rumors about Willis to provoke negative responses in the workplace. The acts included not allowing Plaintiff Willis to set up employee and leadership training classes, interfering and taking over her internal communications responsibilitiesand not allowing Plaintiff to schedule workplace discrimination training. Plaintiff Willis advised Castro and corporate leadership of the risk to the business. As a result, Castro went to extraordinary lengths to even the score with Willis. Castro excessively monitored and stalked Plaintiff Willi. Plaintiff became concerned for her safety. Castro had knowledge of Willis' protected activity as Willis directly advised her and senior corporate leadership of her complaints.

26.     Plaintiff Willis opposed Castro's conduct and complained to Castro, the plant manager, and to Hege Spaun, Plaintiff's HR supervisor and human resources director of Defendant Aker BioMarine Antarctic AS, Defendant's parent entity. Aker did not monitor the workplace, failed to respond to complaints, and effectively discouraged complaints from being filed even after Plaintiff Willis recommended

solutions, including Alternative Dispute Resolution as a solution to handling complaints.

27.     Willis was forced on vacation and suspended to deter her from the right to penalize and prevent her from participating in and opposing discriminatory employment practices and participating in investigations.

28.     Plaintiff also made complaints that her own layoff was discriminatory and retaliation and complained that she was being laid off because of her opposition to  and complaints of discrimination and retaliation against her and other employees of Defendant.   Plaintiff made complaints that the Defendant's layoffs were discriminatory.   Defendant failed to reinstate Plaintiff after her complaints and Defendant failed to respond to her contentions and allegations.   As a result, on January 29, 2020, Plaintiff's employment was terminated and she has not been reinstated.

29.     On information and belief, on or about March 2020, Defendant created a new position of HR supervisor.  Defendant hired Victoria Gomez who it is asserted was substantially younger than Plaintiff Willis.   Defendant did not offer Plaintiff Willis the opportunity to return to work, did not offer Plaintiff the new position and did not ask Plaintiff Willis to apply for the position.

## IV. CAUSES OF ACTION

## <u>FAMILY MEDICAL LEAVE ACT VIOLATION</u>

30.    Plaintiff realleges and incorporates the allegations contained above herein as if fully stated herein.

31.    Plaintiff has satisfied all jurisdictional prerequisites in connection with her claim under the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et. seq*.

32.    Defendant is an "employer" as defined by the FMLA in 29 U.S.C. § 2611(4).

33.    During the time that Plaintiff was employed by Defendant, she was an "eligible employee" as defined by the FMLA in 29 U.S.C. § 2611(2), or as represented to him by Michele Willis with human resources and/or Karen Rosales, who was in charge of payroll and benefits.

34.    While Plaintiff was employed by Defendant, Plaintiff or a covered family member had an illness that can be defined as a "serious health condition" under the FMLA as outlined in 29 U.S.C. § 2611(11).

35.    Plaintiff's husband a disability such that he required three surgeries in 2019 – two (2) in September and then shoulder surgery in November 2019.

36.     Plaintiff's mother had / has a disability affecting her mother's balance, ability to walk *and ability to care for herself*. She uses a cane and has 24/7 care and is not able to care for herself. Plaintiff's mother broke her shoulder on Friday, December 13, 2019.

37.     Plaintiff informed Hege Spaun, Tone Lorentzen, and Noelia Castro that Plaintiff was taking time off from work to care for her husband. Requests were made in writing.

38.     Defendant objected to and deterred Plaintiff taking time off to care for her Mother / Husband . Castro would deter Plaintiff by assigning her additional work, delaying her leave for time off, and upsetting her employees while Plaintiff was off. These acts  deterred Plaintiff from taking time away from work.

39.     Plaintiff informed Noelia Castro that Plaintiff was taking time off from work to care for her mother.

40.     Defendant Castro informed Plaintiff Willis that she needed her to work during the Christmas holiday to cover for the plant as Castro would be off. This interfered with and prevented Plaintiff Willis' time off to further care for her mother and/or husband. Castro retaliated against Willis for opposing perceived unlawful practices against her and others by denying her time off.

41,    Section 105 of the FMLA and section 825.220 of the FMLA regulations prohibit the following actions:

- An employer is prohibited from interfering with, restraining, or denying the exercise of, or the attempt to exercise, any FMLA right.

- An employer is prohibited from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise any FMLA right.

- An employer is prohibited from discharging or in any other way discriminating against any person, whether or not an employee, for opposing or complaining about any unlawful practice under the FMLA.

- All persons, whether or not employers, are prohibited from discharging or in any other way discriminating against any person, whether or not an employee, because that person has — has instituted, or caused to be instituted, any proceeding under or related to the FMLA.

42.    Prohibited conduct by Defendant in this matter includes discrimination, harassment and refusing to authorize FMLA leave for an eligible employee, discouraging an employee from using FMLA leave, manipulating an employee's work hours to avoid responsibilities under the FMLA, using an employee's request for or use of FMLA leave as a negative factor in employment actions, such as hiring,

14

promotions, or disciplinary actions, or, interfering with, restraining, or denying the exercise of rights provided by the FMLA.

43.   Plaintiff Willis was entitled under the FMLA to take intermittent leave to care for a parent with a serious health condition.  While the leave was approved, it is clear that she suffered discrimination, harassment and retaliation for taking FMLA leave.

44.   It is asserted Defendant laid off and/or terminated Plaintiff's employment for seeking designation and/or leave under FMLA, which violates the protections of the FMLA as outlined in 29 U.S.C. § 2615(a).

45.   As a result of Defendant's violations of the FMLA, Plaintiff has suffered actual damages in the form of lost wages, bonuses and benefits (past and future), in an amount that has not yet been fully established, but which will be provided at time of trial.

46.   As a result of this willful violation of the FMLA, Plaintiff requests that he be awarded all damages, to which she is entitled, as outlined in 29 U.S.C. § 2617, including, but not limited to, lost wages, salary, employee benefits, and any other compensation denied or lost as a result of the violation, plus interest.  In addition, Plaintiff requests liquidated damages equal to the amount of reimbursable

compensation described above.  Plaintiff also requests any additional equitable relief to which he is entitled, including reinstatement, if warranted and/or feasible.

46.    Plaintiff also requests reasonable attorney's fees and court costs.

47.    Whenever in this petition it is alleged that the Defendant did any act or thing, it is meant that Defendant's officers, agents, servants, employees or representatives did such act or thing and that at the time such act or thing was done, it was done with the full authorization or ratification of or by Defendant and was done in the normal and routine course and scope of employment of Defendant's officers, agents, servants, employees or representatives.

## Discrimination under the FMLA

48.    In the alternative, Plaintiff alleges that because Plaintiff engaged in activity protected by the FMLA, Defendant retaliated / discriminated against Plaintiff, including terminating Plaintiff's employment / ending Plaintiff's employment.

49.    These acts by the Defendant constitute unlawful intentional discrimination / retaliation in violation of the FMLA and entitles Plaintiff to recovery of damages.

16

## **Retaliation under the FMLA**

50.     Plaintiff protested and opposed the Defendant's / Noelia Castro's discriminatory and 7retaliatory treatment to Defendant and to Castro. Plaintiff had a reasonable belief that Defendant's actions were unlawful employment practices under the FMLA.

51.    In the alternative, Plaintiff alleges that because Plaintiff engaged in activity protected by the FMLA, Defendant retaliated / discriminated against Plaintiff, including terminating Plaintiff's employment / ending Plaintiff's employment.

52.    These acts by the Defendant constitute unlawful intentional discrimination / retaliation in violation of the FMLA entitles Plaintiff to recovery of damages.

## **CLAIMS ARISING UNDER THE REHAB ACT 29 USC Sec. 794 et seq. and AMERICAN WITH DISABILITIES ACT: ADA 42 USC Sec. 12212 et seq., And TEXAS LABOR CODE**

53.     Plaintiff incorporates the factual allegations set forth above and set forth herein as if set forth verbatim.

54.     Upon information and belief, Defendant entered into federal contracts or received / receives federal assistance.

55.     In the alternative, Plaintiff alleges that based on Plaintiff's association with a handicapped individual (Plaintiff's Mother and/or Plaintiff's Husband) that Defendant discriminated against Plaintiff. Plaintiff has shown: (1) her qualification for the job, (2) an adverse employment action, (3) the employer's knowledge of the employee's disabled relative, and (4) that the adverse employment action occurred under circumstances raising a reasonable inference that the relative's disability was a determining factor in the employer's adverse action.

## DISCRIMINATION AND RETALIATION IN VIOLATION OF the AGE DISCRIMINATION In EMPLOYMENT ACT, ADEA, 29 USC Sec. 623 Et. SEQ. AND THE TEXAS LABOR CODE

56.     Plaintiff incorporates the factual allegations set forth above and incorporates them herein as if fully set forth.

57.     Plaintiff was approximately 52 years old at the time of the events herein.  Plaintiff was terminated in January 2020.  Plaintiff performed her job in a satisfactory manner at all relevant times.

58.     On or about March 2020, Defendant created a new position, HR Supervisor, performing the same or similar duties as Plaintiff had been performing. Defendant did not offer Plaintiff Willis the position nor was she informed of the position and offered the opportunity to apply.

59.     Plaintiff was approximately fifty-two (52) at the time of these events.

18

Plaintiff was terminated in January of 2020.

60.     Defendant hired a substantially younger person to replace Plaintiff to perform Plaintiff's job duties.

61.     Plaintiff would show that Plaintiff was substantially more qualified for the position than the person selected.

62.     Plaintiff would show that Defendant's justification for its action is not credible, false and a pretext for unlawful discrimination.

63.     In the alternative, Plaintiff alleges, Plaintiff alleges that because of Plaintiff's age (52), Defendant discriminated against Plaintiff as set out herein.

64.     These acts by the Defendant constitute unlawful intentional discrimination / retaliation in violation of the Texas Labor Code Sec. 21 et seq including Sec. 21.051 and the ADEA and entitles Plaintiff to recovery of damages.

## **Retaliation**

65.     Plaintiff protested Castro's discriminatory treatment of employee(s) and of Plaintiff Willis, to Defendant including complaints to Defendant's management, including complaints about sex discrimination and retaliation, disability discrimination and retaliation and age and FMLA discrimination and

retaliation , in violation of Title VII, the ADA, the ADEA, the Rehab Act and the Texas Labor Code.

66.     Plaintiff had a reasonable belief that Defendant's actions were unlawful employment practices under federal law and the Texas Labor Code. Defendant terminated Plaintiff's employment on or about January 29, 2020.

67.     In the alternative, Plaintiff alleges that because Plaintiff engaged in activity protected by federal law and the Tex. Lab.Code Sec. 21.055 (opposed, made complaint, makes a charge, or participated in any manner in an investigation, proceeding or hearing of discrimination), Defendant retaliated / discriminated against Plaintiff, including terminating Plaintiff's employment / ending Plaintiff's employment.

68.     These acts by the Defendant constitute unlawful intentional discrimination / retaliation in violation of federal law and the Texas Labor Code Sec. 21 et seq including Sec. 21.055 and entitles Plaintiff to recovery of damages.These acts by the Defendant constitute unlawful intentional discrimination / retaliation in violation of the Texas Labor Code Sec. 21 et seq. and entitles Plaintiff to recovery of damages.

### IV. JURY DEMAND

**69.**     Plaintiff requests trial by jury on all claims.

## V. PRAYER FOR RELIEF

Wherefore, Plaintiff requests that on final trial, Plaintiff have judgment against Defendant as follows:

1.     Judgment against Defendant for Plaintiff's actual damages, including lost wages past and future, bonuses, salary and benefits (both back pay and front pay), in an amount to be determined, and compensatory damages for mental anguish and emotional distress and damage to her reputation, past and future;

2.     Judgment against Defendant for liquidated damages for the maximum amount allowed by law, including doubling of all back pay awarded and an award of exemplary damages;

3.     An order that Defendant take such other and further actions as may be necessary to redress Defendant's violation of the FMLA and any other applicable claims including reinstatement, if warranted or feasible;

4.     Pre-judgment and post-judgment interest at the maximum amount allowed by law;

5.     Costs of suit, including expert's fees and attorney's fees;

6.     The award of such other and further relief, both at law and in equity, including injunctive relief and reinstatement, to which Plaintiff may be justly entitled.

**Respectfully Submitted,**

**/s/ *Adam Poncio***
**Adam Poncio**
**State Bar No. 16109800**
**S.D. ID No. 194847**
**salaw@msn.com**
**Alan Braun**
**State Bar No. 24054488**
**S.D. ID No. 1428056**
abraun@ponciolaw.com

**PONCIO LAW OFFICES**
**A Professional Corporation**
**5410 Fredericksburg Rd., Suite 310**
**San Antonio, Texas 78229**
**Telephone: (210) 212-7979**
**Facsimile:   (210) 212-5880**

**Chris McJunkin**
**State Bar No. 13686525**
**S.D. ID No. 23548**
**cmcjunkin@stx.rr.com**
**4510 Anthony St.**
**Corpus Christi, Texas 78415**
**Telephone: (361) 882-5747**
***Facsimile:* (361) 882-8926**

**ATTORNEYS FOR PLAINTIFF**